1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JEFF LAMONTE SIGLER,                    No.  2:24-cv-1840 DJC AC

12                    Petitioner,

13         v.                                FINDINGS AND RECOMMENDATIONS

14   JOSH PRUDHEL, Warden,

15                    Respondent.

16

17        Petitioner is a California state prisoner proceeding pro se with an application for a writ of

18   habeas corpus pursuant to 28 U.S.C. § 2254.  The action proceeds on a petition challenging

19   petitioners' 2022 conviction for assault with a deadly weapon and dissuading a witness.  ECF No.

20   1.  Respondent has answered, ECF No. 12, and petitioner has filed a traverse, ECF No. 14.

21                                BACKGROUND

22   I.        Proceedings in the Trial Court

23        A.   Preliminary Proceedings

24        Petitioner was charged in San Joaquin County with assault with a deadly weapon in

25   violation of Cal. Penal Code § 245(a)(1) and dissuading a witness from prosecuting a crime in

26   violation of Cal. Penal Code § 136.1(b)(2).  In relation to the assault charge, it was alleged that

27   petitioner inflicted great bodily injury under circumstances involving domestic violence, and as to

28   both counts that petitioner had been previously convicted of a serious felony.  The amended

information further alleged seven aggravating circumstances, four of which related to both counts and three of which related to the assault charge only.  On January 3, 2022, petitioner entered not guilty pleas and denied the allegations.

   B.  The Evidence Presented at Trial

   The jury heard evidence of the following facts.[1]  Sometime around April or May 2021, petitioner and his then-girlfriend Leanna were driving together near Lodi.  An argument between the two resulted in petitioner driving Leanna's car off the road and into a vineyard.  The car sustained extensive damage.  Around the same time, Leanna's trailer was stolen.  Petitioner regained possession of the trailer and told Leanna it now belonged to him.  Leanna began staying at various motels and withdrew $800 from petitioner's bank account using his bank card.

   Late on the night of July 11, 2021, petitioner sent Leanna a text message saying he was going to give her "one opportunity" to return his bank card, daring her to claim she did not have it.  He then sent three text messages during the early morning hours of July 12, 2021, threatening to kill her if she did not return his money.  Leanna did not respond.

   About 90 minutes later, while driving down Hammer Lane in Stockton, Leanna noticed petitioner's gold Buick behind her.  Petitioner drove into the back of her Acura.  Leanna accelerated to get away from him, but petitioner pursued her.  When Leanna reached a dead end, petitioner got out of his car and tried to open her car door.  Leanna managed to turn around and drive away.  Petitioner caught up to her and drove into the rear passenger side quarter panel of her car, causing her to spin out and crash into a brick structure.  Petitioner drove away.  Leanna was seriously injured in the crash and was treated for a fractured hip.

   Petitioner was charged with assault with a deadly weapon on July 23, 2021, and his arraignment took place three days later.  On September 6, petitioner called Leanna from jail.  He said he loved her and would choose her over a million dollars.  Leanna said he was lying: "You fucking made me spin out and crash my car over money ...."  Petitioner denied causing the crash

---

[1] This factual summary is adapted from the opinion of the California Court of Appeal, ECF No. 11-18.  Petitioner challenges the accuracy of the facts as "found" by the Court of Appeal, and that issue is addressed below in discussion of his claim for relief.

and claimed he was "nowhere near [her] car." Leanna again said he was lying. Petitioner asked her what was going to happen when he went to court the next day. Leanna said she did not know. Petitioner asked whether she would be there. Leanna said she would, but she did not want the prosecution to know she was there because she "didn't want to be part of it."

Petitioner told Leanna, "[T]hey're tripping on some messages that you said I sent you. And I told them, I told them they were tripping .... I didn't send you no messages like that." Petitioner continued, "That's the only thing that they, that they were tripping on. They said they were going to give me two years for that message ... because I have a strike." Petitioner told Leanna, "if you don't fix that tomorrow that's what they're going to give me," but she said she did not "have to fix it at all" and added "You told me, you said that you were looking at more than two years, you said 10 years, that's the only reason why I started feeling sorry thinking about it again cause that would be fucked up."

Petitioner and Leanna again argued over whether he hit her car and caused the crash. Petitioner repeatedly denied it. Leanna was adamant that he did. Petitioner then asked her whether she was "going to help [him] tomorrow or not" and added, "I could sink your ship just as fast as you[ ] were trying to sink mine for some reason.... Quit lying to them." Leanna asked, "About what?" Petitioner said he needed Leanna "to fucking go in there" and tell the prosecution that he "didn't send [her] no messages with ill intentions." Petitioner told Leanna, "They're not worried about the car, they're worried about the messages. They're going to give me two years." Leanna replied, "You are going to have to explain the messages yourself. I don't know how to explain messages that came from your phone." Petitioner said, "How did they get ... it doesn't have my name on it?" Leanna explained, "In my phone it does." Petitioner and Leanna then argued over whether that was true. Eventually, petitioner made a final request: "Can you go over there and tell them that I didn't send the messages to you, tomorrow or not? That's all."

Although Leanna had reported to responding officers and a detective that petitioner was the one who chased her and twice ran into her car, at trial she denied that petitioner caused the crash. But portions of the car chase were captured on various traffic cameras along the route, and an accident investigator testified that the damage to petitioner's Buick and the gold paint transfer

3

1    on Leanna's car indicated that petitioner had caused the crash.

2           In connection with the assault count, the prosecution presented testimony from an expert

3    in domestic violence, David Cropp, as well as testimony from another one of petitioner's former

4    girlfriends and her mother, recounting prior incidents of domestic violence.

5           C.   Outcome

6           The jury found petitioner guilty of both counts and found the great bodily injury allegation

7    to be true.  In a bifurcated proceeding, the court found true all seven alleged aggravating

8    circumstances and the allegation that petitioner had been previously convicted of a serious felony.

9           On April 11, 2022, petitioner was sentenced to a total term of 20 years in state prison

10   comprised of six years on count 1 (the middle term of three years doubled because of the strike

11   prior), four years on count 2 (the middle term of two years doubled because of the strike prior),

12   the upper term of five years for the great bodily injury enhancement, and five years for the prior

13   serious felony enhancement.

14   II.     Post-Conviction Proceedings

15          Petitioner timely appealed, and the California Court of Appeal affirmed the judgment of

16   conviction on March 14, 2024.  ECF No. 11-18.  The California Supreme Court denied review on

17   May 29, 2024.  ECF No. 11-20.  Petitioner made no applications for state collateral relief.

18              STANDARDS GOVERNING HABEAS RELIEF UNDER THE AEDPA

19          28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of

20   1996 ("AEDPA"), provides in relevant part as follows:

21                  (d) An application for a writ of habeas corpus on behalf of a person
22                  in custody pursuant to the judgment of a state court shall not be
                    granted with respect to any claim that was adjudicated on the merits
23                  in State court proceedings unless the adjudication of the claim –

24                  (1) resulted in a decision that was contrary to, or involved an
                    unreasonable application of, clearly established Federal law, as
25                  determined by the Supreme Court of the United States; or

26                  (2) resulted in a decision that was based on an unreasonable
                    determination of the facts in light of the evidence presented in the
27                  State court proceeding.

28   The statute applies whenever the state court has denied a federal claim on its merits,

4

1    whether or not the state court explained its reasons.  Harrington v. Richter, 562 U.S. 86, 99

2    (2011).  State court rejection of a federal claim will be presumed to have been on the merits

3    absent any indication or state-law procedural principles to the contrary.  Id. (citing Harris v. Reed,

4    489 U.S. 255, 265 (1989) (presumption of a merits determination when it is unclear whether a

5    decision appearing to rest on federal grounds was decided on another basis)).  "The presumption

6    may be overcome when there is reason to think some other explanation for the state court's

7    decision is more likely."  Id. at 99-100.

8        The phrase "clearly established Federal law" in § 2254(d)(1) refers to the "governing legal

9    principle or principles" previously articulated by the Supreme Court.  Lockyer v. Andrade, 538

10   U.S. 63, 71-72 (2003).  Only Supreme Court precedent may constitute "clearly established

11   Federal law," but courts may look to circuit law "to ascertain whether…the particular point in

12   issue is clearly established by Supreme Court precedent."  Marshall v. Rodgers, 569 U.S. 58, 64

13   (2013).

14       A state court decision is "contrary to" clearly established federal law if the decision

15   "contradicts the governing law set forth in [the Supreme Court's] cases."  Williams v. Taylor, 529

16   U.S. 362, 405 (2000).  A state court decision "unreasonably applies" federal law "if the state

17   court identifies the correct rule from [the Supreme Court's] cases but unreasonably applies it to

18   the facts of the particular state prisoner's case."  Id. at 407-08.  It is not enough that the state court

19   was incorrect in the view of the federal habeas court; the state court decision must be objectively

20   unreasonable.  Wiggins v. Smith, 539 U.S. 510, 520-21 (2003).

21       Review under § 2254(d) is limited to the record that was before the state court.  Cullen v.

22   Pinholster, 563 U.S. 170, 180-181 (2011).  The question at this stage is whether the state court

23   reasonably applied clearly established federal law to the facts before it.  Id. at 181-182.  In other

24   words, the focus of the § 2254(d) inquiry is "on what a state court knew and did."  Id. at 182.

25   Where the state court's adjudication is set forth in a reasoned opinion, §2254(d)(1) review is

26   confined to "the state court's actual reasoning" and "actual analysis."  Frantz v. Hazey, 533 F.3d

27   724, 738 (9th Cir. 2008) (en banc).  A different rule applies where the state court rejects claims

28   summarily, without a reasoned opinion.  In Richter, supra, the Supreme Court held that when a

5

1   state court denies a claim on the merits but without a reasoned opinion, the federal habeas court

2   must determine what arguments or theories may have supported the state court's decision, and

3   subject those arguments or theories to § 2254(d) scrutiny.  Richter, 562 U.S. at 102.

4                                   DISCUSSION

5       I.      Preliminary Considerations

6           Petitioner sets forth a single putative ground for relief: that the California Court of Appeal

7   unreasonably determined the facts of the case within the meaning of § 2254(d)(2) "with regard to

8   the evidence presented at the trial and what led to the conviction."  ECF No. 1 at 5, 7.  An

9   unreasonable determination of facts by a state court lifts the bar to federal habeas relief interposed

10  by the AEDPA, but it does not constitute a ground for relief.  Fry v. Pliler, 551 U.S. 112, 119

11  (2007) (the federal habeas statute establishes a precondition to relief, not grounds for entitlement

12  to relief).  Where a federal habeas petitioner demonstrates an unreasonable state court denial of

13  relief under either prong of § 2254(d), he must go on to demonstrate his conviction's

14  constitutional infirmity under a *de novo* standard.  Frantz v. Hazey, 533 F.3d 724 (9th Cir. 2008)

15  (en banc).

16          It is plain from the attachments to the petition that petitioner is pursuing his appellate

17  argument that the dissuasion conviction was unsupported by sufficient evidence.  See ECF No. 1

18  at 9-19 (excerpt of Petition for Review).  Accordingly, the court construes the petition as alleging

19  substantively that the dissuasion conviction is unsupported by evidence sufficient to satisfy due

20  process.  Petitioner's argument under § 2254(d) is addressed in discussion of the state court's

21  opinion, below.

22      II.     Petitioner's Allegations and Pertinent State Court Record

23          Petitioner's appellate challenge to the sufficiency of the evidence turned on the theory that

24  because Cal. Penal Code § 1361(b)(2) applies only to pre-charging dissuasion, the jail-house

25  conversation between petitioner and Leanna could not support criminal liability.  ECF No. 11-15

26  (Appellant's Opening Brief) at 61-69.  In his petition for review in the California Supreme Court,

27  and here, he argued that the Court of Appeal improperly drew a "weak and speculative" inference

28  regarding the state of the evidence.  ECF No. 1 at 14, 17.  Petitioner contends in sum that the

                                          6

prosecutor failed to produce evidence sufficient for the jury to conclude that petitioner was attempting to dissuade Leanna from causing charges additional to the ones pending at the time of the phone call from being brought and pursued.  Id.

III.    The Clearly Established Federal Law

Due process requires that each essential element of a criminal offense be proven beyond a reasonable doubt.  In re Winship, 397 U.S. 358, 364 (1970).  In reviewing the sufficiency of evidence to support a conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 319 (1979).  If the evidence supports conflicting inferences, the reviewing court must presume "that the trier of fact resolved any such conflicts in favor of the prosecution," and the court must "defer to that resolution."  Id. at 326.  "A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury."  Cavazos v. Smith, 565 U.S. 1, 2 (2011) (per curiam).

IV.    The State Court's Ruling

This claim was raised on direct appeal.  Because the California Supreme Court denied discretionary review, the opinion of the California Court of Appeal constitutes the last reasoned decision on the merits and is the subject of habeas review in this court.  See Ylst v. Nunnemaker, 501 U.S. 797 (1991); Ortiz v. Yates, 704 F.3d 1026, 1034 (9th Cir. 2012).  The appellate court ruled in pertinent part as follows:

> Defendant contends the evidence is insufficient to support his dissuasion conviction.
>
> Defendant was charged with dissuasion under Penal Code section 136.1, subdivision (b)(2). As relevant here, that provision makes it unlawful for any person to attempt to prevent or dissuade a crime victim or witness to a crime from "[c]ausing a complaint, indictment, information, probation or parole violation to be sought and prosecuted, and assisting in the prosecution thereof." (§ 136.1, subd. (b)(2).)
>
> Relying on *People v. Reynoza* (2022) 75 Cal.App.5th 181 (*Reynoza*), review granted May 11, 2022, S273797, defendant argues the evidence is insufficient to support his dissuasion conviction because the jailhouse phone call between defendant and

Leanna took place after his arrest and the filing of the criminal complaint, and after Leanna had shown the detective incriminating text messages from defendant. As explained in *Reynoza*, section 136.1, subdivision (b)(2) "requires proof that, among other things, the defendant attempted to prevent or dissuade another person from causing [one of the enumerated charging documents] to be filed. If the defendant was aware the relevant charging document had already been filed, and the defendant did not attempt to prevent or dissuade the filing of any amended or subsequent charging document, the defendant has not violated [this provision]." (*Reynoza*, at p. 189.) In that case, after the defendant's brother was charged with a firearms offense and made several court appearances, the defendant and two others approached a witness in his brother's case and told him to drop the charges. (*Id.* at p. 184.) However, because the relevant charging document had already been filed at the time of the alleged dissuasion, and because there was no evidence that the defendant was either unaware of that fact or intended to prevent or dissuade the filing of an amended or subsequent charging document, the evidence was insufficient to support the dissuasion conviction. (*Id.* at p. 187.)

Here, although defendant was already charged with assault with a deadly weapon at the time of his phone call with Leanna, his statements during the phone call indicate he intended to dissuade her from causing an amended charging document to be filed. At the time of the phone call, defendant was charged with a single offense, assault with a deadly weapon based on driving his car into Leanna's car and causing her to crash. During the phone call, however, defendant expressed his belief that the People were more interested in prosecuting him for the text messages he sent Leanna prior to the car chase and collision: "They're not worried about the car, they're worried about the messages." Those messages arguably contained a criminal threat. But in order to prosecute defendant for making a criminal threat, the People would have had to amend the complaint to charge that offense. Moreover, although defendant and Leanna argued during the phone call about whether he hit her car, his specific request was for her to tell the prosecution that he did not send the text messages: "Can you go over there and tell them that I didn't send the messages to you, tomorrow or not? That's all."

The evidence is sufficient to support a conclusion that defendant intended to dissuade Leanna from causing an amended charging document "to be sought and prosecuted, and assisting in the prosecution thereof." (§ 136.1, subd. (b)(2).) Accordingly, we need not address an issue pending in the California Supreme Court regarding the differing interpretations of section 136.1, subdivision (b)(2) in *Reynoza* and in *People v. Velazquez* (2011) 201 Cal.App.4th 219, 232-233 [the provision encompasses an attempt to dissuade a victim or witness from assisting in the prosecution of a charging document that has already been filed].)

ECF No. 11-18 at 4-6.

////

V.      Objective Reasonableness Under § 2254(d)

    A.  The State Court Did Not Unreasonably Apply Clearly Established Federal Law

The California Court of Appeal did not cite Jackson v. Virginia, but neither its reasoning nor its result is inconsistent with Jackson and progeny.  That is what matters.  See Early v. Packer, 537 U.S. 3, 8 (2002) (per curiam) (AEDPA's limitations on relief apply even where the state court is unaware of applicable U.S. Supreme Court precedents, "so long as neither the reasoning nor the result of the state-court decision contradicts them."); see also Bell v. Cone, 543 U.S. 447, 455 (2005) ("Federal courts are not free to presume that a state court did not comply with constitutional dictates on the basis of nothing more than a lack of citation.").

Under Jackson v. Virginia, state law provides the elements of the substantive criminal offense and the federal due process question is whether there was sufficient evidence to prove each of those elements beyond a reasonable doubt.  Chein v. Shumsky, 373 F.3d 978, 983 (9th Cir. 2004) (quoting Jackson, 443 U.S. at 324 n.16); Emery v. Clark, 643 F.3d 1210, 1214 (2011). Because the elements which must be proved in a prosecution under Cal. Penal Code § 136.1 are exclusively a matter of California law, they are unreviewable here; this court must accept the state courts' construction of state law.  See Juan H. v. Allen, 408 F.3d 1262, 1278 n.14 (9th Cir. 2005); see also Bradshaw v. Richey, 546 U.S. 74, 76 (2005) (per curiam) ("We have repeatedly held that a state court's interpretation of state law… binds a federal court sitting in habeas corpus.").

In this case, the state appellate conducted its sufficiency review according to the plain language of Cal. Penal Code § 136.1(b)(2).  As the trial court instructed the jury, also directly pursuant to the statutory language:

> The Defendant is charged in Count 2 with intimidating a witness in violation of Penal Code section 136.1(b)(2).
>
> To prove that the Defendant is guilty of this crime, the People must prove that:
>
> 1. The defendant tried to prevent or discourage Leeanna from cooperating or providing information *so that an information could be sought and prosecuted*, and from helping to prosecute that action.
>
> 2. Leeanna was a crime victim;

9

1    AND

2    3. The defendant knew he was trying to prevent or discourage
     Leeanna from cooperating or providing information *so that an*
3    *information could be sought and prosecuted*, and from helping to
     prosecute that action and intended to do so.
4

5    CT 314 (ECF No. 11-2 at 28) (emphasis added).

6       People v. Reynoza, 75 Cal.App.5th 181 (2022), on which petitioner relies, interprets this

7    statutory language and holds that a § 136.1(b)(2) charge does not lie where the dissuasion from

8    cooperation with law enforcement relates to charges that have already been filed and of which the

9    defendant is aware.[2] Reynoza does *not* require that a jury be instructed in terms beyond the

10   statutory language on the necessary intent to dissuade cooperation with future, as opposed to

11   pending, charges.  Reynoza does *not* hold that the charges must specify, or the jury unanimously

12   agree on, the potential additional charge that the defendant sought to avoid.[3]  Reynoza certainly

13   provides a basis for a California defendant to seek dismissal of § 136.1(b)(2) charges where the

14   underlying conduct involves only post-charging dissuasion.[4]  It also provides a basis for a motion

15   for directed verdict or an appellate challenge on the same grounds.  Petitioner brought such an

16   appellate challenge, and he lost because the evidence presented at trial *does* support a conclusion

17   that he was trying to dissuade Leeanna from providing information related to potential charges that

18   he was *not* facing at the time of the jailhouse phone call: charges arising from the text messages.

19      The court of appeal's reasoning on this issue accords fully with clearly established federal

20   law.  Jackson affirmatively required the reviewing court to view the evidence in the light most

21   favorable to the prosecution, and to defer to the jury's judgment that all inferences from

22   conflicting evidence were resolvable in the prosecution's favor.  Jackson, 443 U.S. at 319, 326.

23   Petitioner has not identified any failure of proof on an essential element of the charge, nor any

24   inference that was impermissible or irrational.  See Cavazos, 565 U.S. at 2.  Particularly in light

25   [2]  Following petitioner's appeal, the California Supreme Court affirmed Reynoza, resolving a split
26   of authority in the California appellate courts.  People v. Reynoza, 15 Cal. 5th 982 (2024).
     [3]  Moreover, petitioner has not argued in any court that the jury was improperly instructed
27   regarding the elements of § 136.1(b)(2) liability.
     [4]  Other subsections of § 136.1 might apply in such circumstances, as might other sections of the
28   penal code that address witness intimidation.

1   of the "double dose of deference" to the verdict that is required under <u>Jackson</u> and the AEDPA,

2   <u>Boyer v. Belleque</u>, 659 F.3d 957, 964 (9th Cir. 2011), petitioner has not overcome § 2254(d)(1)'s

3   bar to federal habeas relief.

4         B.  <u>The State Court Did Not Base Its Decision on Unreasonable Factual Determinations</u>

5         Petitioner argues that the appellate court's decision was based on an unreasonable

6   determination of the facts of the case, satisfying § 2254(d)(2)'s alternative exception to AEDPA's

7   limitation of federal habeas relief.  ECF No. 1 at 5, 7.  Petitioner does not, however, identify any

8   issue of disputed fact that the appellate court independently resolved, nor any material error in the

9   appellate court's recitation of the facts of the case.[5]

10         Section 2254(d)(2) applies where a state court's denial of a federal constitutional claim is

11   predicated on factual findings by that court or a lower state court which are objectively

12   unreasonable in light of the evidence presented.  <u>See</u>, <u>e.g.</u>, <u>Wiggins v. Smith</u>, 539 U.S. 510, 528

13   (2003) (state court denied <u>Strickland</u> claim[6] on basis of "clear factual error" regarding the

14   contents of social service records); <u>Brumfield v. Cain</u>, 576 U.S. 305 (2015) (state court denied

15   <u>Atkins</u> hearing[7] on basis of unreasonable factual determinations that petitioner's IQ was

16   inconsistent with mental retardation and that petitioner had presented no evidence of adaptive

17   impairment); <u>Miller-El v. Dretke</u>, 545 U.S. 231, 240 (2005) (state court denied <u>Batson</u> claim[8] on

18   basis of unreasonable factual finding that the prosecutor's asserted race-neutral reasons for

19   striking African-American jurors were true).  Section 2254(d)(2) also applies where the state

20   court made its factual findings according to a flawed process.  <u>See</u> <u>Taylor v. Maddox</u>, 366 F.3d

21   992, 999-1001 (9th Cir.), <u>cert. denied</u>, 543 U.S. 1038 (2004).

22         Here, the California Court of Appeal made no independent factual findings that could be

23

---

24   [5]  To the contrary, petitioner has expressly adopted the appellate court's factual summary for
     purposes of sufficiency review.  <u>See</u> ECF No. 1 at 9.

25   [6]  <u>Strickland v. Washington</u>, 466 U.S. 688 (1984) (ineffective assistance of counsel violates Sixth
     Amendment rights of criminal defendants).

26   [7]  <u>Atkins v. Virginia</u>, 536 U.S. 304 (2002) (Eighth Amendment forbids the execution of
     intellectually disabled defendants).

27   [8]  <u>Batson v. Kentucky</u>, 476 U.S. 79 (1986) (racial discrimination in jury selection violates equal
     protection).

28

1  subject to § 2254(d)(2) scrutiny.  Rather, it reviewed the jury's verdict for consistency with due

2  process in light of the evidence presented at trial.  Sufficiency of the evidence claims are record-

3  based claims which are evaluated under § 2254(d)(1).  See Emery v. Clark, 643 F.3d at 1213-

4  1214; see also Polina v. Montgomery, 833 F. App'x 51, 55 (9th Cir. 2020) ("[A] state court's

5  resolution of an insufficiency of the evidence claim is evaluated under 28 U.S.C. § 2254(d)(1),

6  not § 2254(d)(2)") (citing Emery).

7       The inferences petitioner attacks as unreasonable or unsupported by evidence were drawn

8  not by the state court but by the jury.  Section 2254(d)(2) accordingly has no application here.

9  For the reasons already explained, the inferences necessary to the verdict—most importantly that

10  petitioner was trying to persuade Leanna not to provide information that might result in charges

11  arising from his text messages—were not irrational, and therefore the state court's denial of relief

12  cannot have been objectively unreasonable.  See Cavazos, 565 U.S. at 2.

13                                         CONCLUSION

14       For all the reasons explained above, the state courts' denial of petitioner's claims was not

15  objectively unreasonable within the meaning of 28 U.S.C. § 2254(d).  Even without reference to

16  AEDPA standards, petitioner has not established any violation of his constitutional rights.

17  Accordingly, IT IS HEREBY RECOMMENDED that the petition for writ of habeas corpus be

18  denied.

19       These findings and recommendations are submitted to the United States District Judge

20  assigned to the case, pursuant to the provisions of 28 U.S.C. §636(b)(l).  Within twenty-one days

21  after being served with these findings and recommendations, any party may file written

22  objections with the court and serve a copy on all parties.  Such a document should be captioned

23  "Objections to Magistrate Judge's Findings and Recommendations."  If petitioner files objections,

24  he shall also address whether a certificate of appealability should issue and, if so, why and as to

25  which issues.  See 28 U.S.C. § 2253(c)(2).  Any reply to the objections shall be served and filed

26  within fourteen days after service of the objections.  The parties are advised that failure to file

27  ////

28  ////

objections within the specified time may waive the right to appeal the District Court's order.

Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: January 14, 2025

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE